Curtis HAGERT, Sr., Curtis Hagert, Jr., and David Hagert, all d/b/a Hagert Farms, Plaintiffs and Appellees,

v.

HATTON COMMODITIES, INC., Defendant, Third-Party Plaintiff, Appellee and Cross-Appellant

v.

POWELL BEAN GROWERS ASSOCIATION, Third-Party Defendant, Appellant and Cross-Appellee,

and

Greeley Trading Company, Third-Party Defendant and Appellee.

Civ. No. 10455.

Supreme Court of North Dakota.

May 31, 1984.

McConn, Fisher & Thune, Grand Forks, for plaintiffs and appellees; argued by Patrick W. Fisher, Grand Forks.

Peterson & Associates, Fargo, for defendant, third-party plaintiff, appellee and cross-appellant; argued by James Patrick Barone, Fargo.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for third-party defendant, appellant and cross-appellee; argued by James L. Lamb, Grand Forks;

appearance by Marjorie M. Young, Grand Forks.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for third-party defendant and appellee; argued by Paul G. Woutat, Grand Forks.

PEDERSON, Justice.

This is an appeal by Powell from a judgment based upon a jury verdict in a case involving defective seed. Powell also appealed from the order denying a motion for judgment notwithstanding the verdict (Rule 50(b), NDRCivP) or, in the alternative, for a new trial (Rule 59, NDRCivP). We reverse and remand for a new trial.

Hagert Farms purchased certified Wyoming 166 pinto bean seed from Hatton Commodities and planted them in two plots irrigated by overhead center pivot systems. It soon became evident that the bean plants were infected with a disease identified as "halo blight," caused by contaminated seed. Upon the expert advice of an agricultural scientist, Hagert Farms destroyed the plants and reseeded. There was a consequent delayed growing season and a reduction in anticipated yield.

Hagert Farms sued Hatton Commodities, alleging negligence, breach of warranty, and strict liability in tort, and demanded damages for the additional expense incurred in replanting and for loss of profit due to the reduced yield. Hatton Commodities answered, denying liability and raising several affirmative defenses, and filed a third-party claim against the supplier, Greeley, and against the processor, Powell. Greeley answered the third-party claim, counterclaimed against Hatton Commodities, and cross-claimed against Powell. Powell answered the third-party claim and the cross-claim, counterclaimed against Hatton Commodities, and cross-claimed against Greeley. No questions relating to notice or statute of limitations were raised.

All claims were consolidated for trial to a jury. At the close of the evidence, Hagert Farms withdrew the negligence claim. The case was submitted to the jury on both remaining theories, breach of warranty (contract) and strict liability (tort).[1] In instructing the jury on the matter of strict liability in tort, the court, over Powell's objection, omitted a requirement that the product be found to be "unreasonably dangerous." The jury was also instructed to return a special verdict which did not require a distinction between injury to property and loss of profits. It also did not distinguish between the theory of breach of warranty and strict liability in tort.

The special verdict (1) awarded damages to Hagert Farms against Hatton Commodities; (2) awarded Hatton Commodities indemnity from Greeley; and (3) awarded Greeley indemnity from Powell. Judgment was accordingly entered (1) in favor of Hagert Farms against Hatton Commodities for $66,129.23, plus post-judgment interest; (2) in favor of Hatton Commodities and against Greeley and Powell, jointly and severally, for $66,129.23, plus costs, disbursements and attorney fees of $18,639.06, plus post-judgment interest; and (3) in favor of Greeley against Powell for all sums paid by Greeley in satisfaction of the judgment in favor of Hatton Commodities, plus costs, disbursements and attorney fees of $10,861.18.

After Powell filed its appeal, Hatton Commodities cross-appealed but thereafter withdrew the cross-appeal. The argument has not adequately addressed the consequences upon nonparticipating parties which may result from our reversal and remand for a new trial as to Powell. We do not intend to foreclose, in any manner, the trial court from proceeding in accordance with justice after hearing arguments that may be presented on the subject.

Because it is dispositive of this appeal, we start with Powell's argument that "strict liability in tort" is not applicable in this case because it involves a commercial transaction where the claim is for the recovery of lost profits. To the extent that

---

1. The label "strict liability" has been applied to both tort and contract claims as well as criminal offenses. See *State v. Rippley*, 319 N.W.2d 129 (N.D.1982).

an undistinguishable part of the Hagert Farm recovery is for lost profits ordinarily only recoverable under a contract theory, we agree that Powell is entitled to a new trial.

 Rules 8 and 10, NDRCivP, require only that a "claim for relief" be set forth in a complaint, and both apply equally to claims tried to the court and claims tried to a jury. Recovery can be sought on several theories or on alternative theories. Appellate courts expect to find an understanding of the theory upon which an award is made—in a bench trial from the findings (Rule 52(a), NDRCivP) and in a jury trial from the special verdict and the instructions. The special verdict and the instructions in this case are deficient in these respects.

This court, at syllabus 7 of *Johnson v. American Motors Corporation*, 225 N.W.2d 57, 58 (N.D.1974), adopted "... the rule of strict liability in tort, as set forth in § 402A, ... [Restatement (Second) of Torts]".[2] That suit involved allegations of physical harm to the user of a manufactured product, an automobile. The trial court had granted a summary judgment and, accordingly, the appeal did not involve instructions or a special verdict. The allegations of the complaint were not referred to in this court's decision. Loss of profits apparently were not claimed. The potential for conflict between § 402A and the contract remedies of the Uniform Commercial Code, adopted in 1965 (Chapter 296, S.L.1965—Title 41, NDCC), was not an is-

sue in *Johnson* and was not considered. No product other than the automobile was considered.

Professor William Prosser, as the Reporter for the American Law Institute Project—Restatement (Second) of Torts, in 1961 introduced § 402A, applicable to the sale of "food" only. The section was expanded in 1962 to products for "intimate bodily use." In 1964 it was extended to "any product." [3]

After oral argument was held in this case, we requested that the parties submit additional briefs covering *inter alia* whether or not "natural products," such as certified seed, not sold for human or animal consumption, had been the subject of any decision or preemptive statute. No significantly controlling law or precedent was revealed.

We move then from the identity of the "product" to the identity of the "harm thereby caused." Hagert Farms identified the claimed "harm" in the complaint as including loss of the seed itself, as well as loss of profits.

Research readily discloses a split of authorities as to recovery of "economic" loss under § 402A.[4] One of the earliest and most often cited cases on the subject is *Seely v. White Motor Company*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), authored by Justice Traynor, reputedly an ardent advocate of § 402A. *Seely* held that the legislative scheme of recovery (the sales act or UCC) has not been superseded by the doctrine of strict liability in tort.[5]

---

**2.** Syllabus 7 of *Johnson v. American Motors Corporation, supra,* provides:
 "This court hereby adopts the rule of strict liability in tort, as set forth in § 402A, 2 Restatement of Torts 2d: 'Special Liability of Seller of Product for Physical Harm to User or Consumer—(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer *without substantial change in the* condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a)

the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

**3.** See Titus, Restatement (Second) of Torts, *Section 402A and the Uniform Commercial Code,* 22 Stanford Law Review 713 (1970).

**4.** See *e.g.:* Speidel—*Products Liability, Economic Loss And The UCC,* 40 Tenn.L.Rev. 309 (1973); also Titus (identified at footnote 3).

**5.** *Justice Traynor wrote:* "The law of sales has been carefully articulated to govern the economic relations between suppliers and consum-

Persuasive analysis of the proper roles of § 402A and the UCC as to economic losses can be found in many recent decisions, including: *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); *Jones & Laughlen Steel v. Johns-Manville Sales*, 626 F.2d 280 (3d Cir.1980); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir. 1976); as well as *Seely v. White Motor Company, supra.*

We have not overlooked the minority view and the consequences pointed out principally by the New Jersey courts, including: *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 191 N.J.Super. 22, 465 A.2d 530 (1983); *H. Rosenblum, Inc., Etc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983); *Santor v. A and M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

Further analysis is made in 2 Frumer & Friedman, *Products Liability*, § 16A[4][k] (1983), and Annot. 13 ALR3d 1057, 1088, § 8 (1967).

In a 1937 decision, *Bakke v. Nelson*, 68 N.D. 66, 276 N.W. 914 (1937), this court concluded that implied warranties arise by operation of law, from the mere sale of flax seed, knowing the purposes of a relying buyer, unless negated by the contract. The Uniform Sales Act, predecessor to the UCC, was in effect at that time.

Hagert Farms refers us to our discussions of economic loss recovery in *Eichenberger v. Wilhelm*, 244 N.W.2d 691, 697 (N.D.1976); *Herman v. General Irrigation Co.*, 247 N.W.2d 472 (N.D.1976); and *Johnson v. Monsanto Co.*, 303 N.W.2d 86 (N.D. 1981). Possible conflict between § 402A and the UCC when economic losses are sought was not considered in any of those cases and, consequently, no disposition thereof was intended.

 The instant case affords us the first opportunity to consider whether eco-

nomic loss in a defective product case may be recovered under a theory of strict liability in tort. We conclude that economic loss, as distinguished from injury to property, may be recovered under express or implied warranty under the Uniform Commercial Code but not under § 402A, strict liability in tort. The jury was improperly instructed in the special verdict form which permitted an improper recovery and a new trial is required.

Because some other issues raised on appeal may arise on the retrial, in the interest of judicial economy we add the following:

As we said in *Wilson v. General Motors Corporation*, 311 N.W.2d 10, 15 (N.D. 1981), "The requirement of unreasonable danger is an integral part of the strict liability in tort doctrine in North Dakota ... A plaintiff relying upon the theory of strict liability in tort cannot prevail simply by proving a product defect and causation of the injury which the plaintiff suffered...." See also Comment i to § 402A and § 28-01.1-05(2), NDCC.

 Implied warranties arise as a matter of law. Sections 41-02-31 and 41-02-32, NDCC (2-314 and 2-315, UCC). *Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71 (N.D.1981). Whether or not an implied warranty of fitness for a particular purpose is given and whether or not there is an appropriate "reliance" are questions of fact.

 Added expenses and lesser yield are both recoverable on a claim based upon a warranty theory of recovery. *McLane v. F.H. Peavey & Co.*, 72 N.D. 468, 8 N.W.2d 308 (1943) [seed grain]; *Bakke v. Nelson, supra* [flax seed]; *Agr. Services Ass'n, Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057 (6th Cir.1977) [okra seed]. A warranty may be specifically negated. *Deere & Webber Co. v. Moch*, 71 N.D. 649, 3 N.W.2d 471 (1942) [farm machinery]; *Zicari v. Joseph Harris Co.*, 33 A.D.2d 17, 304 N.Y.

ers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Com-

mercial Code but, rather to govern the distinct problem of physical injuries." *Seely v. White Motor Company*, 403 P.2d at 149.

S.2d 918 (1969) [cabbage seed]. Attaching a tag labeled "certified seed" is a warranty. *Dessert Seed Co. v. Drew Farmers Supply, Inc.*, 248 Ark. 858, 454 S.W.2d 307 (1970) [tomato seed].

■ For purposes of the application of certain provisions of the Uniform Commercial Code, farmers may be considered merchants. Annot., 93 ALR3d 484 (1979).

Judgment and order denying new trial reversed; case remanded.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

GIERKE, J., concurs in the result.