**COLONIAL PARK COUNTRY CLUB, Plaintiff-Appellant,**

v.

**JOAN OF ARC, Defendant-Appellee.**

**No. 83–1333.**

United States Court of Appeals, Tenth Circuit.

Oct. 25, 1984.

John A. Bannerman of Sutin, Thayer & Browne, P.C., Albuquerque, N.M., for plaintiff-appellant.

Ben M. Allen of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for defendant-appellee.

Before SETH and McWILLIAMS, Circuit Judges, and CAMPOS, District Judge.[*]

McWILLIAMS, Circuit Judge.

This is a products liability case with federal jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. The central issue is whether the federal district judge correctly understood and applied the local law of the State of New Mexico. In this regard, the Honorable Howard C. Bratton, Chief Judge for the United States District Court for the District of New Mexico, held that, under New Mexico law, recovery in a products liability case, as contrasted possibly with an action based on negligence or breach of warranty, is limited to damages for "physical harm" to person or property, and does not permit recovery of the type of damages here sought. On this basis, the district court granted summary judgment in favor of the defendant. Plaintiff appeals.

On appeal, the plaintiff raises two issues: (1) the district court erred in its understanding of New Mexico law, and that the Supreme Court of New Mexico, though it has not spoken on this precise issue, would permit recovery in a products liability case of economic losses as damages; (2) the matter raised by the defendant in its motion for summary judgment was not timely raised, and was therefore waived. We shall consider these two issues in reverse

---

[*] Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation.

order. The "timeliness" issue requires a chronology of events.

The Colonial Park Country Club, located in Clovis, New Mexico (hereinafter "Country Club"), purchased a quantity of "Reed Brand Three-Bean Salad" from Johnson Food Company, Inc., a food distributor, which, in turn, had acquired the three-bean salad from Joan of Arc Company, a food manufacturing, processing, packaging, and wholesaling company, which was incorporated in Delaware with its principal place of business in Illinois. Thirty-three members and guests of the Country Club suffered botulism poisoning as a result of eating the three-bean salad manufactured and processed by Joan of Arc. Two of the victims died as a result of botulism poisoning.

A series of personal injury and wrongful death suits were filed in the state courts of New Mexico against the Country Club and its insurance carriers. These suits were all settled.

Thereafter, a series of actions based on the botulism poisoning, including the instant case, were filed in the United States District Court for the District of New Mexico. Specifically, the Country Club brought suit against Joan of Arc. Also, the Country Club's insurers sued Joan of Arc as subrogated parties. Further, some seventeen of the botulism victims made claims against Joan of Arc. The various actions in federal court were consolidated, and the claims made by the seventeen victims were settled.

The trial of the claim of Country Club, and its insurers, was bifurcated. A jury was to first determine the issue of liability, with the question of damages to be reserved for later determination, should the jury determine that Joan of Arc was liable to the Country Club.

Initially, the Country Club sued on alternative theories of negligence, breach of warranty and products liability. The damages sought by the Country Club, as we understand it, were not for monies paid by it, or its insurers, to the actual victims of the botulism poisoning, but were damages based on injury incurred by the Country Club itself, *i.e.*, loss of membership, loss of income and a "tarnished reputation." During the course of the proceedings, the Country Club dropped its claims based on negligence and breach of warranty, and the case was submitted to the jury solely on the basis of products liability. The jury returned a verdict finding that Joan of Arc was liable to the Country Club.

It was in this setting that Joan of Arc filed a motion for partial summary judgment on the ground that under New Mexico law economic loss could not be recovered in a products liability case. This motion was granted. Thereafter, discovery ensued concerning the nature and extent of damages sought by the Country Club. By affidavit, the president of the Country Club itemized the Club's damages as follows: (1) damages in the amount of $6,219.62 arising from restocking its kitchen and bar with foodstuffs and equipment; (2) salaries, in the amount of $2,928.00, paid employees of the Country Club while it was under quarantine and closed; (3) expenses incurred by the Country Club in borrowing money to keep the Club open, and (4) lost memberships. The total amount sought by Country Club was $345,622.62.

In this setting, both the Country Club and Joan of Arc sought summary judgment. The Country Club's position was that the damages asked for by its president in his affidavit were, under New Mexico law, allowable in a products liability case. Joan of Arc, on the contrary, asserted that *none* of the damages sought by Country Club were recoverable, under New Mexico law, in a products liability case.

As we understand it, at the time these various motions for partial summary judgment and summary judgment were filed, the Supreme Court of New Mexico had not, nor has it since, addressed the precise issue here raised by the parties. Accordingly, at one point in the proceedings, Chief Judge Bratton, we are advised, certified this particular matter to the New Mexico Supreme Court, but the latter declined to accept certification.

It was in this general setting that the federal district judge denied the Country Club's motion for summary judgment and granted Joan of Arc's motion. In entering judgment for Joan of Arc, the district judge held that having adopted § 402(A) of the Restatement (Second) of Torts, the New Mexico Supreme Court would limit recovery in a products liability case to "physical harm" to the ultimate consumer or his property, and that the damages sought here by the Country Club were not of that sort. Country Club appeals.

### Waiver Issue

■ Accepting for the moment the premise that all of the damages claimed by Country Club, as such are identified by its president in his affidavit, constitute so-called "economic loss," Country Club asserts that, under Fed.R.Civ.P. 12(b)(6) and under local rules of court, Joan of Arc should have raised this particular issue by pretrial motion, and that having failed to do so Joan of Arc waived the entire matter. Joan of Arc concedes that ideally the defense of failure to state a claim should be raised by motion prior to trial. However, Joan of Arc points out that it did include such a defense in its answer, and that under Fed.R.Civ.P. 12(h)(2) the defense of failure to state a claim can be made as late as "at the trial on the merits."

Our study of the matter leads us to conclude that there has been no waiver, and that Joan of Arc was not somehow foreclosed from raising the question of whether economic loss is recoverable in a products liability case in the manner it did. If a motion to dismiss for failure to state a claim had been filed by pre-trial motion in the instant case, it would undoubtedly have been denied, since the Country Club was, at that point, asserting claims based on negligence and breach of warranty, which arguably would permit recovery for economic loss. When the Country Club's claim was later reduced to one based solely on products liability, the court ordered bifurcation, with the question of damages, i.e., what damages would be recoverable in a prod-

ucts liability case and the extent thereof, being specifically reserved for determination only *after* a jury had determined, if it did, that there was liability on the part of Joan of Arc to the Country Club. The jury found such liability, and then the question remained as to the nature and extent of the Country Club's damages. Discovery followed, and, as above stated, the president of Country Club in his affidavit identified the nature and extent of the damages claimed. Thereafter, both parties moved for summary judgment. In such setting, we fail to see any waiver by Joan of Arc of its argument that economic loss is not recoverable in a products liability case. First, "trial on the merits" as to damages had not occurred, so there was no violation of Fed.R.Civ.P. 12(h)(2). Moreover, in our view, we do not actually perceive this to be a "failure to state a claim" problem. Rather, the true issue, after the jury determined liability, is: What damages does the law allow a plaintiff in a products liability case? We doubt that such an issue could ever be waived, as it seems incongruous that, due to inaction by a defendant, the plaintiff could be awarded damages to which he is not otherwise entitled under the applicable law. In any event, we find no waiver here.

### Damages Issue

■ After determining that the damages sought by Country Club were purely economic loss, the federal district judge concluded that under the present state of the New Mexico law such could not be recovered in a products liability case. In so ruling, the district judge applied the majority rule that economic loss is not recoverable in a products liability case. *E.g., Hagert v. Hatton Commodities,* 350 N.W.2d 591 (N.D.1984); *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Such was the view of the California Supreme Court, which was a leader in developing the law of products liability. *Seely v. White Motor Company,* 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965). *Cf. Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965) (leading case

for minority view that economic loss is recoverable under strict liability). We are not inclined to disturb the federal district judge's understanding of New Mexico law, which, under established authority in this circuit, is entitled to some deference by this court. *Binkley v. Manufacturer's Life Insurance Co.*, 471 F.2d 889 (10th Cir.1973); *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033 (10th Cir.1975).

Further, we note that the Country Club chose to file its case in federal court, and hence is in a somewhat awkward position to now claim that the federal judge misunderstood the New Mexico law. *See Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir.1977) (plaintiff "who chooses federal courts in diversity actions is in a peculiarly poor position to seek certification.").

■ Finally, the Country Club argues that the damages which it now seeks are not truly economic loss, but are more in the nature of an injury to property and recoverable in a products liability case. We do not agree. Loss of club membership with a resultant decrease in dues and initiation fees, the expense incurred in restocking foodstuffs, salaries paid employees when the facility was closed, and the expense incurred in borrowing money to keep the Club open and operating are to us an economic loss. Further, we would prefer to approach this particular matter in the terms used in § 402(A) of the Restatement (Second) of Torts, adopted by the New Mexico Supreme Court in *Stang v. Hertz Corporation*, 83 N.M. 730, 497 P.2d 732 (1972). Restatement § 402(A) provides that one who sells a product in a defective condition unreasonably dangerous to the consumer or his property is subject to liability for *physical* harm caused the consumer or his property. In the instant case there was no *physical* harm to the Country Club's property. The damages sought are for consequential economic loss allegedly sustained by the Club.

Judgment affirmed.