**AGRISTOR LEASING, a Wisconsin Partnership consisting of Agri-Stor Credit Corporation, a Delaware Corporation, and Steiner Financial Corporation, a Utah Corporation, Plaintiffs,**

v.

**Arlyn SPINDLER and Rose Spindler, Defendants and Third Party Plaintiffs,**

v.

**NORTH CENTRAL HARVESTORE, INC., a South Dakota Corporation, and A.O. Smith Harvestore Products, Inc., a Delaware Corporation, Third Party Defendants.**

Civ. No. 84–1049.

United States District Court,
D. South Dakota, N.D.

March 30, 1987.

John S. Lovald, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, S.D., for plaintiffs.

David A. Von Wald, Hoven, S.D., for defendants and third party plaintiffs.

Raymond M. Schutz, Siegel, Barnett & Schutz, Aberdeen, S.D., for third party defendant North Central Harvestore, Inc.

Robert B. Anderson, May, Adam, Gerdes & Thompson, Pierre, S.D., for third party defendant A.O. Smith Harvestore Products, Inc.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Gentlemen:

This action was initially commenced on June 28, 1984 by Agristor Leasing (Agristor). Agristor alleges that Arlyn and Rose Spindler defaulted on an agricultural equipment lease agreement and are in wrongful possession of the equipment subject to the agreement.

Almost one month later, the Spindlers filed a third party complaint against North Central Harvestore, Inc. (NCH) and A.O. Smith Harvestore Products, Inc. (AOS).

Spindlers' third party complaint was subsequently amended on May 30, 1985.

Third party defendant AOS filed on May 5, 1986 a motion for summary judgment on all issues raised in the third party complaint. Third party defendant NCH joined in AOS's motion on May 9, 1986. After extensive briefing, this court denied the motions of AOS and NCH except for one issue on which judgment was reserved. Further research and study was necessary on the issue of whether economic losses are recoverable under the tort theories of strict liability and negligence and whether third party plaintiffs' alleged losses are economic.

## BACKGROUND

Arlyn and Rose Spindler are dairy farmers residing near Hoven, South Dakota. Sometime prior to October 5, 1981, the Spindlers came in contact with Charlie Jacober, a salesman employed by NCH. On or about October 5, 1981, the Spindlers entered into a lease or purchase agreement with NCH for certain Harvestore equipment, products of AOS. The Harvestore silo and other equipment were to be used in the Spindlers' dairy operations for feed storage.

This third party action arises, in part, out of allegations by the Spindlers that the Harvestore feed storage structure was negligently designed and fabricated and was manufactured, designed and sold to them in an unreasonably dangerous and defective condition. Spindlers essentially allege that the Harvestore structure spoiled the feed it contained, resulting in their dairy herd suffering medically and reproductively, milk production dropping and, ultimately, lost income.

## ISSUES

1. Are economic losses recoverable under the tort theories of strict liability or negligence?

2. If economic losses are not recoverable, are the alleged losses sustained by the Spindlers economic?

## DISCUSSION

### I.

In passing on a motion for summary judgment, the court is required to view the facts in a light most favorable to the non-moving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Williams v. City of St. Louis,* 783 F.2d 114, 115 (8th Cir.1986).

### A. *Strict Liability in Tort*

■ The issue of whether economic losses[1] are recoverable under the tort theories of strict liability or negligence "brings into sharp focus a long standing controversy in the law of product liability." *American Home Assurance Co. v. Major Tool and Machine, Inc.,* 767 F.2d 446, 447 (8th Cir. 1985). Under both tort theories, however, the majority of precedent holds, as a matter of law, that economic losses are not recoverable. This court agrees.

The split of opinion with regard to strict liability originated with the two cases of *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) and *Santor v. A and M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). *Seeley* refused to apply the strict liability doctrine to economic loss. The California Supreme Court ruled that economic losses were to be recovered under the warranty provisions of the Uniform Commercial Code. "The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act of the Uniform Commercial Code, but rather to govern the distinct problem of physical injuries." 45 Cal.Rptr. at 21, 403 P.2d at 149.

In *Santor* the New Jersey Supreme Court reached the opposite result. It decided that economic losses were recovera-

ble under strict liability theories. The Uniform Commercial Code did not provide an exclusive set of remedies.[2] 207 A.2d at 309.

This court is bound by South Dakota law in determining the recoverability of economic losses in tort. *See American Home Assurance Co.,* 767 F.2d at 447. The South Dakota Supreme Court has not directly decided the issue. Indications are, however, that South Dakota will adopt the approach of the California Supreme Court in *Seely v. White Motor Co.* Recovery of economic losses is limited to the remedies of the Uniform Commercial Code.

Although the South Dakota Supreme Court has not directly decided that economic losses are not recoverable in strict liability, it has at least anticipated and contemplated the issue. In *Pearson v. Franklin Laboratories, Inc.,* 254 N.W.2d 133, 139 (S.D.1977), Justice Wollman speaking for the Court wrote:

> In adopting the doctrine of strict liability in tort in the *Engberg [v. Ford Motor Co.]* case, [87 S.D. 196, 205 N.W.2d 104 (1973)] we did not pause to consider the potential conflict between the warranty provisions of the Uniform Commercial Code and the concept of strict liability. * * * In *Sweetman Construction Co. v. Dakota Pump, Inc.,* S.D., [88 S.D. 650] 226 N.W.2d 792 [1975], we did recognize the possibility that there may be some limitations upon the applicability of the strict liability doctrine, but we were not called upon to resolve the issue in that case. Likewise, we conclude that in the instant case the matter of liability could and should have been resolved upon plaintiffs' pleaded theory of breach of implied warranty....

The Court expressly reserved its ruling on whether the Uniform Commercial Code

---

1. The term "economic losses" refers, generally, to losses arising out of commercial transactions, except those involving personal injury or damage to other property. Restatement (Second), Torts § 402A (1965).

2. Further case law development is beginning to limit the scope of the *Santor* decision. For

example, one opinion has concluded that the New Jersey courts, as well as others, are narrowing *Santor's* application from all commercial parties to consumers only. *2000 Watermark Association v. Celotex Corp.,* 784 F.2d 1183, 1186 (4th Cir.1986).

limits the recovery of economic losses in strict liability actions. On the other hand, the Court did make it clear that the two doctrines of breach of warranty and strict liability in tort are quite distinct. "The two doctrines have different bases and are subject to different defenses." [3] *Pearson*, 254 N.W.2d at 138.

It is this clear doctrinal distinction which other courts and commentators have, at least in part, relied on in deciding that economic losses are not recoverable in strict liability suits. For example, in an often cited article, Professor Richard E. Speidel contends that extending the strict liability doctrine to commercial or economic losses would emasculate the warranty provisions of the Uniform Commercial Code by depriving buyers and sellers of the opportunity to adjust or allocate commercial risks through private agreement. Speidel, *Products Liability, Economic Loss and the UCC*, 40 Tenn.L.Rev. 309, 318, 327 (1973).

How a particular state views the doctrinal differences between strict liability and warranty liability in terms of privity requirements also determines under which theory or theories economic losses are recoverable. In New Jersey, for instance, the Court in *Santor v. A and M Karagheusian* may have "stretched" its strict liability in tort theory to allow recovery of economic losses that might have otherwise been prevented by strict state privity requirements. *See* Steenson, *The Anatomy of Products Liability in Minnesota: The Theories of Recovery*, 6 Wm.Mitchell L.Rev. 1, 50 n. 207 (1980).

Minnesota, on the other hand, has adopted the most liberal privity alternative of the Uniform Commercial Code, so it is unnecessary for Minnesota courts to "stretch" strict liability to cover economic losses. Such losses are recoverable under warranty theories. *Superwood Corporation v. Siempelkamp Corporation*, 311 N.W.2d 159, 161 n. 5 (Minn.1981).

Likewise, South Dakota has adopted the most liberal privity alternative of the Uniform Commercial Code. SDCL 57A–2–318 (1980); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, § 11–3 (1978). It therefore appears that the South Dakota legislature broadly views privity under the Uniform Commercial Code. *See Pearson v. Franklin Laboratories, Inc.*, 254 N.W.2d at 139; *Sweetman Construction Company, Inc. v. Dakota Pump, Inc.*, 88 S.D. 650, 226 N.W.2d 792, 794 (S.D.1975); Titus, *Restatement (Second) of Torts Section 402A and the Uniform Commercial Code*, 22 Stan.L. Rev. 713 (1970). Consequently, it is unnecessary for South Dakota courts to expand strict liability theories to cover economic losses.

Finally, it is relevant to note that the majority of jurisdictions that have considered this issue have followed the California Supreme Court's holding in *Seely v. White Motor Company*. [4]

### B. *Negligence*

Along with strict liability, the tort theory of negligence has also been proven "to be among the least fruitful avenues for recovery of economic loss." Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 929 (1966). Almost all courts considering the issue "have evinced a uniformly hostile attitude toward claims ... for economic loss based on negli-

---

**3.** The court went on to explain: "In a breach of implied warranty case brought under the provisions of the Uniform Commercial Code, the defense of lack of notice, the requirement of privity ..., and disclaimer are available, whereas, in a suit based upon strict liability in tort they are not." *Pearson*, 254 N.W.2d at 138–39.

**4.** Some of the jurisdictions adopting the *Seely* position include: *Miehle Co. v. Smith-Brooks Printing Co.*, 303 F.Supp. 501 (D.Colo.1969); *Ha-*

*gert v. Hatton Commodities, Inc.*, 350 N.W.2d 591 (N.D.1984); *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124 (Ia.1984); *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976); *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973).

gence theories." *Id.*[5] "The *Restatement* apparently takes a similar position." *Id.*; *See* Restatement (Second), Torts § 395 (1965).

Several rationales have been offered to justify denying economic loss in negligence actions. First, it is a general tort principle that economic interests are not entitled to protection against mere negligence. Prosser and Keeton, Handbook on the Law of Torts, §§ 95A, 101 (5th Ed.1984). Other reasons essentially echo those justifying the denial of economic loss in strict liability suits. The existence of more liberal privity requirements which expand warranty coverages and preventing an invasion into private contractual warranty agreements covered by the Uniform Commercial Code have been relied on extensively. Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. at 930.

The decisions extending economic loss liability in negligence actions are generally either distinguishable or will "not serve as the progenitor of any marked change in the law." *Id.* at 930–31.

One such opinion is *Nobility Homes of Texas v. Shivers*, 557 S.W.2d 77 (Tex.1977). There the Texas Supreme Court held that "Shivers may not recover his economic loss under section 402A of the Restatement (Second) of Torts *but may recover* such loss *under* the implied warranties of the Uniform Commercial Code and *the theory of common law negligence.*" *Id.* at 78 (emphasis added).

*Nobility Homes*, however, is of dubious precedential value for the argument that economic losses are recoverable under negligence theories. In *Nobility Homes*, the stated rule that economic loss may be recoverable in negligence originated at the trial court level and was not discussed at the intermediate state appellate level. The Texas Supreme Court did not consider the negligence issue as it did the strict liability issue. The negligence issue was affirmed on procedural grounds. *Id.* at 83.

## II.

The second issue for decision is whether the alleged losses sustained by the third party plaintiffs are economic and thus not recoverable under the tort theories of strict liability and negligence. The Spindlers contend that their losses are not economic, in that they constitute "damage to other property" which is recoverable in tort.

Relative to the case at bar, there are two types of loss; economic loss and damage to other property. Damage to other property is defined as damage to property collateral to the product itself. *Two Rivers Co. v. Curtiss Breeding Service*, 624 F.2d 1242, 1246–47 (5th Cir.1980). For instance, in *Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978) a defective heater at a refinery exploded. In analyzing *Signal Oil*, the Fifth Circuit explained that the "explosion and ensuing fire ... destroyed not only the heater, but also a significant portion of the refinery (other property)." *Two Rivers Co.* at 1246. Another example of "other property" can be illustrated with *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In that case, the defective products were truck brakes. If the defective brakes had caused the truck to run into and damage a home, then there would be damage to "other property." *American Home Assurance Co.*, 767 F.2d at 447–48.

Economic loss, on the other hand, is more specific. It is defined as that loss "resulting from the failure of the product to perform to the level expected by the buyer" and the consequential losses resulting from the buyer's inability to make use of the ineffective product, such as lost profits. *Two Rivers Co.*, 624 F.2d at 1246 n. 2; *Agristor Leasing v. Guggisberg*, 617 F.Supp. at 907–08; *Agristor Leasing v. Kramer*, 640 F.Supp. 187, 190 (D.Minn. 1986); *Nobility Homes*, 557 S.W.2d at 78 n. 1; Note, *Economic Loss in Products Lia-*

---

**5.** *American Home Assurance Co.,* 767 F.2d at 447–48; *Agristor Leasing v. Guggisberg,* 617 F.Supp. 902, 907–08 (D.Minn.1985); *Roxalana Hills, Ltd. v. Masonite Corp.,* 627 F.Supp. 1194, 1198–99 (S.D.W.Va.1986); *Karl's Shoe Stores,*

*Ltd. v. United Shoe Mach. Corp.,* 145 F.Supp. 376 (D.Mass.1956); *Seely v. White Motor Co.,* 45 Cal.Rptr. at 23, 403 P.2d at 151; *Inglis v. American Motors Corp.,* 3 Ohio St.2d 132, 209 N.E.2d 583 (1965); *See* note 4, *supra.*

*bility Jurisprudence,* 66 Colum.L.Rev. 917 (1966). Consequential economic losses do not include physical or personal injury. *Id.; 2000 Watermark Association,* 784 F.2d at 1186.

In *Seely v. White Motor Co.,* the plaintiff-purchaser sought to recover for defective truck brakes that caused the truck to bounce violently. 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). The brakes failed to perform as expected and the buyer was denied the benefit of his bargain. Such a loss is purely economic.

■ The third party plaintiffs seek to recover for losses allegedly caused by a defective Harvestore feed storage facility they purchased or leased for their dairy operation, a commercial venture. More specifically, the defective silo allegedly spoiled the feed it housed causing, in turn, medical, reproductive and production problems with dairy cattle and lost profits.

The Spindlers, in essence, seek to recover the resulting losses to their dairy farm due to the Harvestore silo failing to perform as expected. The silo was to limit the oxygen reaching the feed and hinder spoilage. Spindlers claim the silo failed to do so. The resulting claimed damage is economic, and thus not recoverable in tort. Their remedy lies in the Uniform Commercial Code. *Agristor Leasing v. Guggisberg,* 617 F.Supp. at 908; *Agristor Leasing v. Kramer,* 640 F.Supp. at 190.

Accordingly, the motions of the third party defendants, AOS and NCH, for summary judgment on the issues of strict liability and negligence are granted.