**OKLAHOMA GAS & ELECTRIC COMPANY, an Oklahoma corporation, Plaintiff–Appellant,**

v.

**McGRAW–EDISON COMPANY, a Delaware corporation, Defendant–Appellee.**

No. 74381.

Supreme Court of Oklahoma.

July 14, 1992.

---

Andrews Davis Legg Bixler Milsten & Price by Robert D. Nelon, and Robert J. Troester, Oklahoma City, for defendant-appellee.

HODGES, Vice Chief Justice.

Pursuant to the Oklahoma Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, §§ 1601–1611 (1991), the United States Court of Appeals for the Tenth Circuit certified the following question to this Court: "Can a plaintiff in a manufacturer's products liability action recover damages for injury to the allegedly defective product itself and consequential economic harm flowing from that injury?" We answer in the negative.

Plaintiff, Oklahoma Gas & Electric Company (OG & E), entered into contracts with H.B. Zachary Company and Bexar Equipment Company for the purchase of a three-phase power transformer. Bexar Equipment Company entered into a contract with Defendant, McGraw–Edison Company (McGraw–Edison), for the manufacture of the transformer pursuant to the requirements of OG & E. The transformer was placed into service in August, 1977. It exploded on March 23, 1981.

OG & E filed this action in Oklahoma state court on March 22, 1983, seeking recovery of actual damages for injury to the allegedly defective transformer and ancillary equipment and consequential damages for clean-up, repair and reinstallation of the transformer, rental and handling of a temporary transformer and lost profits. These damages were pursued on theories of negligence in the design and manufacture of the transformer, breach of express and implied warranties and manufacturers' products liability.

After removal to the federal court, OG & E dismissed its claims of negligence and breach of warranties. The federal district court granted partial summary judgment in favor of McGraw–Edison on OG & E's claim for damages to the transformer itself and resultant economic harm flowing therefrom. Leave to appeal the partial summary judgment was granted but subse-

Looney, Nichols, Johnson & Hayes by Rocklin D. Lyons, Burton J. Johnson, and Mark S. Cooper, Oklahoma City, for plaintiff-appellant.

quently dismissed as improvidently granted. On remand, OG & E dismissed its claim for damages to ancillary equipment. The federal district court entered final summary judgment in favor of McGraw–Edison on OG & E's claim of manufacturers' products liability for damages to the transformer itself and consequential economic losses. OG & E appealed, prompting the Tenth Circuit to certify the question of law to this Court. The certification of this question, however, predated this Court's pronouncement in *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla.1990).

In *Waggoner,* the purchasers of a defectively designed mobile home sued the manufacturer and the dealer to recover actual damages to the product and punitive damages for the disappointment associated with the manufacturer's unsuccessful attempts to remedy the defect. No claim for personal injury or damage to other property was asserted. *Id.* at 653. Faced with a claim for purely economic loss to the product itself, this Court held that any such attempt to recover should have been brought under the warranty provisions, express or implied, of the sales contract. *Id.*

The *Waggoner* court noted that a buyer's economic expectations are adequately protected by the warranty provisions of the Uniform Commercial Code. Therefore, damage to the product itself, alleged to be caused by a defect, presents a contract action based on the sales contract. In contrast, personal injuries and damage to other property are the harms that manufacturers' products liability was designed to remedy. "No action lies in manufacturers' products liability for injury only to the product itself resulting in purely economic loss." *Id.*

*Waggoner* also noted that the United States Supreme Court reached the same result in a unanimous decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The Supreme Court noted that most states do not allow recovery in products liability for purely economic losses. It concluded that the law of warranties adequately protected a buyer's expectations as to product value. *Id.* at 872, 106 S.Ct. at 2302. *See Waggoner,* 808 P.2d at 653. This Court adopted that reasoning in *Waggoner* and reached the same result.

The *Waggoner* holding controls here. No claim for personal injury or damage to other property is presented by this action. OG & E's action for damages to the product and consequential economic losses sounds in contract, not in manufacturers' products liability. In answer to the certified question, the plaintiff in this action may not recover damages for injury to the allegedly defective product itself and consequential economic harm flowing from that injury upon the theory of manufacturers' products liability.

CERTIFIED QUESTION ANSWERED.

LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, C.J., and ALMA WILSON and KAUGER, JJ., dissent.

ALMA WILSON, Justice, with whom OPALA, Chief Justice and KAUGER, Justice, join, dissenting:

Oklahoma's strict liability theory or remedy of manufacturers' products liability was fashioned to protect the consuming public from unreasonably dangerous defective products and to discourage manufacturers from marketing defective products. *Kirkland v. General Motors Corporation,* 521 P.2d 1353 (Okla.1974). The distinctive element of the tort is that the defective product must be unreasonably dangerous to the consumer or the consumer's property. The majority opinion does not analyze the alleged danger posed by the defective product in this case. Instead, the remedy of manufacturers' products liability is withheld from the plaintiff because of the kind of damages sought in this case. The line of demarcation between contract law and manufacturers' products liability cannot be defined by the kind of damages sought. Such a mechanistic approach undermines the foundation of manufacturers' products liability. Accordingly, I must respectfully dissent.

The question certified herein is broad: Can a plaintiff in a manufacturers' products liability action recover damages for injury to the allegedly defective product itself and consequential economic harm flowing from that injury? This question should be answered within the narrow confines of the relevant facts and the nature of the controversy in which the question arose. 20 O.S.1991, § 1604. The commercial transformer involved in this case exploded. It was a defective product which allegedly posed an unreasonable danger to person and property. The plaintiff now seeks to recover for damages to the transformer and consequential economic loss. Application of *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 653 (Okla.1990), herein blinds this Court to the societal need for protection from defective products that suddenly explode, threatening life and property.[1]

The right to pursue the remedy of manufacturers' products liability must be determined by focus on the danger posed by the defective product rather than the kind of damages claimed. Allegations of the sudden and life-threatening explosion of the transformer manufactured by defendant, McGraw–Edison, fortuitously without harm to plaintiff's employees, is sufficient to allow the plaintiff, OG & E, to maintain a manufacturers' products liability claim.[2]

1. *Waggoner* involved personal loss due to the deterioration and diminution in value of a defective mobil home. In *Waggoner*, this Court reversed a jury verdict in favor of the consumers for replacement of the defective mobile home. Notwithstanding the factual differences, the *Waggoner* rationale is based upon jurisprudence resolving commercial controversies. In reasoning that tort law has not been the traditional remedy for protection of economic expectations, the *Waggoner* opinion cites *Clark v. International Harvester*, 99 Idaho 326, 335, 581 P.2d 784, 793 (1978), wherein the plaintiff sought to recover for repair costs, down time, loss of earnings or loss of profits in his custom farming business, because of a defective part of a tractor which caused a reduction in power; and, *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), wherein the plaintiffs sought to recover repair costs and loss of income or profits in the ship chartering business, because of defective of the turbines which caused a reduction in the power. *Waggoner*, 808 P.2d at 653. Disregarding the factual differences between the two cases, today the Court finds *Waggoner* to be dispositive of this commercial controversy. I remain steadfast in my dissent to the *Waggoner* opinion. *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d at 656.

2. Other courts have addressed the issue of whether damages for injury only to the defective product and/or resultant economic loss may be recovered in a strict products liability action. Most of these cases involved parties in a commercial relationship and a clear majority of the states deny recovery. The approach taken by the minority of states in allowing recovery is best suited to Oklahoma's manufacturers' products liability focus on unreasonably dangerous defective products.

Those states which allow recovery of damages to the defective product and/or economic loss only have emphasized: 1) policy considerations, *Hiigel v. GM Co.*, 190 Colo. 57, 544 P.2d 983 (1975); *C & S Fuel Inc. v. Clark Equipment Co.*, 524 F.Supp. 949 (E.D.Ky.1981); and, *Thompson v. Nebraska Mobile Homes Co.*, 198 Mont. 461, 647 P.2d 334 (1982); 2) dangerous nature of the product, *Northern Power & Engineering Co. v. Caterpillar Tractor Co.*, 623 P.2d 324 (Alaska 1981); *Russell v. Ford Motor Co.*, 281 Or. 587, 575 P.2d 1383 (1978); and, *Corporate Air Fleet of Tennessee, Inc. v. Gates Learjet, Inc.*, 589 F.Supp. 1076 (M.D.Tenn.1984); and, 3) sudden and calamitous occurrence, *Salt River Project Agricultural Improvement and Power District v. Westinghouse Electric Co.*, 143 Ariz. 368, 694 P.2d 198 (1984); *Moorman MFG. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); and, *Star Furniture Co. v. Pulaksi Furniture Co.*, 171 W.Va. 79, 297 S.E.2d 854 (1982).

Those states which refuse to extend strict products liability to claims for recovery of damage to the defective product only include: *Colonial Park Country Club v. Joan of Arc*, 746 F.2d 1425 (10th Cir.1984), applying New Mexico law; *Frey Dairy v. A.O. Smith Harvestore Products, Inc.*, 680 F.Supp. 253 (E.D.Mich.1988); *County of Westchester v. General Motors Co.*, 555 F.Supp. 290 (S.D.N.Y.1983); *Agristor Leasing v. Spindler*, 656 F.Supp. 653 (D.S.D.1987); *Wisconsin Power and Light v. Westinghouse Electric Co.*, 645 F.Supp. 1129 (W.D.Wis.1986); *Iowa Electric Light & Power Co. v. Allis–Chalmers Mfg. Co.*, 360 F.Supp. 25 (D.Iowa, 1973); *Florida Power and Light v. Westinghouse Electric Co.*, 510 So.2d 899 (Fla.1987); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Bay State–Spray & Provincetown Steamship, Inc. v. Caterpiller Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350 (1989); *Sharp Brothers Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo.1986); *National Crane Co. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983); *Local Joint Exec. Bd. of Las Vegas v. Stern*, 98 Nev. 409, 651 P.2d 637 (1982); *Ellis v. Morris, Inc.*, 128 N.H. 358, 513 A.2d 951

Today's outcome shifts the financial burden of life-threatening accidents caused by defective products from the offending manufacturer to the consumer.

OPALA, Chief Justice, with whom KAUGER, Justice, joins, dissenting.

Today the court holds that strict liability for a defective product does not govern this case in which an internal electrical failure in a generator step-up transformer caused an *explosion and ensuing fire.* No one was injured and although the *sudden mishap* hurt some ancillary equipment, the product's purchaser, who happens to be a commercial entity rather than an individual, sought damages *only for physical injury to the defective product itself.*

I must recede from the court's pronouncement. I would adopt for Oklahoma the rule of law announced in *Salt River Project Agr. v. Westinghouse Elec.,*[1] where the court held that products liability *may*

be imposed for *direct property damage sans personal injury* when it results from physical harm to the defective product itself and the loss occurs in a *sudden and accidental manner.* Products liability theory is *not* invocable for *economic loss* that results from the product's *deterioration, internal breakage or depreciation.* In the former setting the loss to the defective product occurs in *circumstances posing or likely to pose an unreasonable danger of harm to persons or other property;* in the latter, it does not.[2]

Our goal in adopting strict liability was to lessen or eliminate the public danger caused by defective products placed in the stream of commerce. In *Kirkland v. General Motors Corporation,*[3] the genesis of products liability, we noted that the *manufacturer* is best situated to protect the public against products that are a menace to safety. We adopted § 402A, Restatement (Second) of Torts,[4] to shift from the

---

(1986); *Hagert v. Hatton Commodities, Inc.,* 350 N.W.2d 591 (N.D.1984); *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977); *Washington Water Power v. Graybar Electric,* 112 Wash.2d 847, 774 P.2d 1199 (1989); and, *Continental Insurance v. Page Engineering Co.,* 783 P.2d 641 (Wyo.1989).

Six states have unequivocally declared that tort recovery of economic loss has no place in a commercial setting between commercial buyers and sellers. *Dairyland Insurance Co. v. GM Co.,* 549 So.2d 44 (Ala.1989); *Kaiser Steel Corp. v. Westinghouse Elec. Corp.,* 55 Cal.App.3d 737, 127 Cal.Rptr. 838, 845 (1976) [Under *Kaiser Steel,* property damage to the product may be recovered in a strict liability action except where the action is between parties who: "(1) deal in a commercial setting, (2) from positions of relatively equal economic strength, (3) bargain the specifications of the product, and (4) negotiate concerning the risk of loss from defects in it." *Aris Helicopters, Ltd. v. Allison Gas Turbine,* 932 F.2d 825, 828 (9th Cir.1991).]; *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.,* 410 N.W.2d 312 (Minn.1987) [Economic loss arising out of commercial transaction is not recoverable under products liability in tort except where personal injury or loss of other property is also sought.]; *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1985) [An individual consumer may recover economic loss in a products liability, but a commercial buyer may not.]; *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.,* 42 Ohio St.3d 40, 537 N.E.2d 624 (1989); and, *Rem Coal Co., Inc. v. Clark Equipment Co.,* 386 Pa.Super.Ct. 401, 563 A.2d 128 (1989).

1. 143 Ariz. 368, 379, 694 P.2d 198, 209 (1985).

2. *See Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alaska 1976) and *Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977). In the earlier case the court held that a mobile home manufacturer was *not* strictly liable in tort. The product's shortcomings, including a leaky roof, did not cause imminent danger. In the second case, foam rug padding used as insulation in a crawl space caused a mobile home to catch fire and burn; the manufacturer was held strictly liable. The court distinguished between a product that was only a "lemon" and one that was defectively dangerous. The first owner suffered only economic loss while the second had direct property damage from a sudden calamity caused by a defectively dangerous product. *See also Northern Power & Eng. v. Caterpillar Tractor,* 623 P.2d 324 (Alaska 1981).

3. Okl., 521 P.2d 1353, 1362 (1974).

4. *See* Restatement (Second) of Torts § 402A (1965), which provides:

"(1) One who sells any product in a defective condition *unreasonable dangerous to the user or consumer or to his property* is subject to *liability for physical harm thereby caused to the ultimate user or consumer, or to his property,* if

(a) the seller is engaged in the *business of selling such a product,* and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

plaintiff the burden of establishing a manufacturer's negligence and replace it with a *manufacturer's duty not to place unsafe products into the stream of commerce.*

A manufacturer's duty to market safe products should not depend upon (1) whether the buyer is a commercial or industrial user as opposed to an individual consumer or (2) the fortuity of whether the full extent of the unreasonable danger posed—i.e., personal injury or damage to property other than the defective product itself—has actually happened. *Products that cause sudden and unexpected accidents are just as dangerous to the public when in the hands of a commercial or industrial user as they are in those of an individual consumer. Moreover, a defective product is still dangerous even though it did not reach its full potential for harm by causing personal injury or damage to other property.*

The court's characterization of this case as one for purely economic loss to the product itself runs counter to the conceptual underpinnings of § 402A,[5] which are intended to *protect* the public—including the commercial or industrial user—from *unsafe products.* For an explanation of my views in a slightly different context, *see Waggoner v. Town & Country Mobile Homes, Inc.* (Opala, V.C.J. concurring in part, dissenting in part).[6]

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." [Emphasis added.]

5. For the pertinent terms of Restatement (Second) of Torts § 402A, *see supra* note 4.

6. Okl., 808 P.2d 649, 654 (1991) (Opala, V.C.J., concurring in part, dissenting in part).