# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1364

_____

John Lowery,                          *
                                      *
        Appellant,             *
                                      *   Appeal from the United States
    v.                              *   District Court for the
                                      *   Eastern District of Missouri.
Hazelwood School District,            *
                                      *
        Appellee.              *

_____

Submitted:  December 14, 2000

Filed:  March 27, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and HANSEN,
    Circuit Judges.

_____

WOLLMAN, Chief Judge.

John Lowery appeals from the order of the district court[1] granting summary judgment against him in his claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Missouri Human Rights Act (MHRA).  We affirm.

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

# I. Background

We take the facts in the light most favorable to Lowery, who suffers impairments as a result of a childhood bout with polio. Lowery has partial paralysis in his left arm and an IQ of 65, diagnosed as mild mental retardation, due to brain damage. He is therefore unable to climb a tree or a fence, paddle a canoe, lift things with his left arm alone, write a check, pay his bills, or perform simple arithmetic. Dennis Sissom, the head of the district's support services department, which includes security and custodial employees, stated in a deposition that he considered Lowery's physical impairment to be the equivalent of that of another staff member who was born without a hand.

On June 18, 1997, Lowery was terminated from his employment with Hazelwood School District, located in Florissant, Missouri, after twelve years as a district security officer. Lowery began his employment with the district in 1985 as a part-time security officer and became full-time in 1989. His duties included patrolling school campuses, assisting with traffic control, and occasionally delivering packages. He worked days and nights until 1993, when he was put on day shifts. In April of 1996, upon his request, he was put exclusively on night shifts. In the course of his employment, Lowery received occasional performance "write-ups." In 1990, he received a traffic ticket while driving a district vehicle. In 1992, he was written up twice for being late for shifts. In 1995, he was involved in a minor car accident, again while driving a department vehicle.

In 1996-97, three more-serious incidents took place. The last two weeks before graduation are known as "prank season" in the district, and graduating high school seniors traditionally attempt pranks that sometimes damage district property. Because of this tradition, security is heightened during prank season, with security officer presence increased by means of extra shifts and through the addition of off-duty police officers as temporary security officers. In May of 1996, Lowery discovered a break-in at one of the district buildings, but was unable to radio the security dispatch company

for help because he was in a radio dead spot on the Hazelwood West campus and the nearest pay phone was not working. In violation of a district policy prohibiting security officers from entering unsecured buildings, Lowery went inside the building and saw four students fleeing. Lowery remained in the building for a period of hours until another security officer came on duty and then reported the incident and contacted the police. Lowery was suspended for four days for entering the building unassisted and for failing to contact police sooner. He then made a verbal request to be transferred to the custodial department, but was not transferred. In September of 1996, another district building was broken into on Lowery's watch. Lowery failed to discover the break-in because he failed to check the building, along with five other buildings assigned to him.

In June of 1997, Lowery was again on duty during prank season. Seventeen students removed a pane of glass from a door and entered a building assigned to Lowery. The students detached a twenty-foot section of railing from the tile floor it was bolted to and carried it to a nearby apartment complex. Although the prank must have required the students to remain in the building for some hours, Lowery did not discover anything amiss until they were gone. After this incident, the school board, acting on Sissom's recommendation, terminated Lowery's employment. One month later, he applied for a custodial job with the district and was interviewed but not hired. Lowery then filed the present action. The district court granted the district's motion for summary judgment, holding that Lowery had neither met his prima facie burden nor demonstrated that the district's poor-performance rationale was pretextual.

## II. Discussion

On appeal, Lowery contends that the district court erred in granting summary judgment against him because he met his prima facie burden and offered evidence demonstrating the district's proffered reason for its actions was pretextual. We review a grant of summary judgment de novo, affirming the decision of the district court only

if no genuine issue of material fact exists, entitling the moving party to judgment as a matter of law. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir. 1998) (en banc). In considering whether summary judgment was appropriate, we view all evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his favor. Id.

In order to avoid summary judgment, Lowery was required to make a prima facie showing that (1) he is disabled within the meaning of the ADA,[2] (2) he is qualified to carry out the essential functions of his position, and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Id. at 1134-35. Sufficient evidence of discrimination may be demonstrated either through direct evidence of discrimination, or through a disparate-treatment showing that Lowery was treated differently than similarly situated employees. Allen v. Interior Constr. Servs., 214 F.3d 978, 982 (8th Cir. 2000). "An inference of discrimination arises where there is some evidence of a causal connection between a plaintiff's disability and the adverse employment action taken against the plaintiff." Id. Assuming, without deciding, that Lowery met his burden with respect to the first two elements of a prima facie case, we affirm the judgment of the district court because the circumstances of the district's actions do not support an inference of discrimination. Because Lowery did not make out a prima facie case of discrimination, we do not reach his argument that a jury could have concluded that the district's stated reason for firing him was pretextual. Cf. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147-48 (2000) (holding, in an Age Discrimination in Employment Act case, that a trier of fact may infer discriminatory intent from evidence of pretext when the employee has made out a prima facie case of discrimination).

---

[2]For our purposes, the Rehabilitation Act and MHRA have the same evidentiary requirements as the ADA. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 n.4 (8th Cir. 1998) (MHRA); Benson v. Northwest Airlines, 62 F.3d 1108, 1112 n.2 (8th Cir. 1995) (Rehabilitation Act).

## A. Direct Evidence of Discrimination

We turn first to the question of whether Lowery presented sufficient direct evidence of discrimination to demonstrate a causal connection between an adverse employment action and his disability. Lowery alleges two distinct adverse employment actions--his termination and the district's subsequent refusal to hire him into the custodial department.[3]

Any credible evidence tending to establish that an employer acted adversely to an individual "on account of" his disability will suffice to provide an inference of discrimination for purposes of summary judgment. Allen, 214 F.3d at 982. The necessary inference is that the adverse action was more likely than not based on a discriminatory criterion illegal under federal law. Wallin v. Minnesota Dep't. of Corr., 153 F.3d 681, 687 (8th Cir. 1998). Our role is not to determine whether the district exercised sound business judgment, but whether its actions suggest discriminatory motives. See Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1312 (8th Cir. 1995) (Title VII). In order to fulfill this requirement, then, Lowery's direct evidence of discrimination must be sufficient for a reasonable fact-finder to infer that he was terminated because of his disabilities.

As direct evidence of discrimination, Lowery presented (1) deposition testimony from Sissom that he contends shows a discriminatory attitude, (2) alleged inconsistencies in the district's explanations for Lowery's firing, (3) deposition statements from a school board member indicating that he had been told that the 1997

---

[3]Lowery also alleges that his request to be moved to a custodial position immediately after he was informed that his termination was being recommended to the board and his July 22, 1997, application for rehire should be construed as accommodation requests. Such eleventh-hour requests, however, are properly understood as requests for reinstatement, not for accommodation. See Mole v. Buckhorn Rubber Prod., 165 F.3d 1212, 1218 (8th Cir. 1999).

-5-

incident happened while Lowery was asleep in his car under a streetlight, and (4) derogatory remarks apparently added to a reference submitted in support of Lowery's application for the custodial position.

We conclude that the evidence Lowery presented is insufficient to support an inference of discrimination. Although Sissom did state in his deposition that he disliked unions because they protected the "weak," he went on to define the term to mean those with a "poor work ethic" and evinced no discriminatory attitude toward Lowery. Although some of his statements suggest that Sissom has strong negative feelings toward unions, they simply do not support the logical leap that he therefore harbored similar feelings toward the disabled in general or Lowery in particular. Similarly, the alleged inconsistencies in the reasons given for Lowery's termination, far from presenting the kind of suspect disparity that creates an inference of discrimination, see Young, 152 F.3d at 1022, are actually only different ways of making the same point: Lowery was terminated because of a poor work record, culminating in the 1997 break-in and vandalism.

We are likewise unpersuaded by Lowery's contention that the deposition statement of a school board member that Lowery had been fired for sleeping on the job during the 1997 break-in provides the necessary link between his termination and his disability. Lowery contends that, because there is no evidence that he failed to detect the break-in because he was asleep, rather than simply unobservant, the board member's statement provides sufficient basis for a jury to conclude that someone in the district who harbored a discriminatory animus toward Lowery intentionally misled the school board into firing him. Even assuming that Lowery is correct that someone overstated the severity of his misconduct, he has failed to provide any evidence that would support an inference that the deception was in any way related to his disability.

Finally, the remarks added to Lowery's application for rehire do not appear to be related in any way to the adverse employment actions. Lowery applied in person

for a custodial position on July 22, 1997. The district's practice was to provide applicants with reference forms at the interview, with the applicants being responsible for having them filled out and returned to the district. Lowery submitted a character reference form from Donald Carpenter, a former employer, on which, in the space provided for comments, appear the hand-printed words, "Trustworthy - Dependable - Sincere - Punctual - John". Following those words, and apparently made with a different type of pen and in different handwriting, appear the words "is (Bullhead) Smart (dumb) mouth." Carpenter stated that he did not add the additional comments, and Lowery contends that a reasonable jury could find that someone from the district added 'dumb' and 'bull-head' to prevent him from becoming re-employed.

Whoever added the derogatory comments and to what purpose, the record demonstrates that the reference played no part in the decisions to fire and not rehire Lowery. The form was dated well after the decision to terminate, and the record reveals that the rehiring decision was based not on an evaluation of Lowery's application, but on the fact that he had just been terminated for poor performance. At most, the altered form is the sort of "scintilla" of evidence that can do no more than raise some "metaphysical doubt" as to the good intentions of district officials and that alone is insufficient to survive summary judgment. See Rabushka v. Crane Co., 122 F.3d 559, 562 (8th Cir. 1997).

We also note that we must consider each of Lowery's proffered pieces of evidence of discrimination in light of the other facts and circumstances surrounding his termination. Young, 152 F.3d 1022-23 (discrimination plaintiff can survive summary judgment only if entirety of evidence supports inference of discrimination). Considering that Lowery's termination occurred immediately after the most egregious of a series of failures to maintain security at the district, no reasonable jury could have concluded from the evidence proffered as direct evidence of discrimination that there was a causal link between Lowery's disability and his termination.

**B. Disparate Treatment**

Lowery also contends that the evidence that he was treated differently than similarly situated employees was sufficient to support an inference of discrimination. In order to meet his evidentiary burden of showing circumstances supporting an inference of discrimination through disparate treatment, Lowery must show that he was treated less favorably than similarly situated employees who are not disabled. Allen, 214 F.3d at 982. Lowery bears the burden of proving that he was similarly situated to the employees whose treatment he compares to his own. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (Title VII)  The question whether employees are similarly situated takes into account the nature of the employment relationships, see id., the relevant decision-makers, id., and the nature of the employees' misconduct, Wallin, 153 F.3d at 687.

Lowery points to five separate examples of different treatment. We find it unnecessary to parse the details of each example, however, because in no instance has Lowery met the requirement that he demonstrate that he was similarly situated to the individuals in question. The comparisons made by Lowery include part-time employees, employees whose infractions are not documented in the record, employees who were disciplined for less serious infractions, and, in one case, an employee who was ultimately terminated. Because he failed to put forth a single situation in which an employee in a similar position with the district had similar performance problems and was treated more favorably, Lowery's disparate impact allegations are insufficient to create the necessary inference of discrimination.

**C. Reasonable Accommodation**

In his reply brief, Lowery also asserts that the district failed to accommodate him before the 1997 incident when it failed to move him to the custodial department on his request after the September 1996 incident that resulted in his suspension. A request for

accommodation, while it need not contain any magic words, must be sufficient to convey to the employer that the employee is requesting that his disability be accommodated. <u>Wallin</u>, 153 F.3d at 689 (employee bears the burden of communicating to employer that he is requesting a disability accommodation when asking for a transfer to a different position). Lowery's 1996 request was apparently a response to his suspension, and he does not argue that he indicated that he needed an accommodation for his disability. Moreover, because Lowery argues that he was capable of performing the essential functions of the security position, he cannot argue that he was entitled to any accommodation.

      The judgment is affirmed.

      A true copy.

        Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.