# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1666

_____

Sidney Simpson,

    Plaintiff - Appellant,

v.

Des Moines Water Works,

    Defendant - Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Southern
\*  District of Iowa.
\*
\*
\*

_____

Submitted: December 17, 2004
Filed: October 10, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Sidney Simpson appeals the magistrate judge's[1] order granting summary judgment in favor of Des Moines Water Works on his discrimination claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Iowa Civil Rights Act. He appeals only the disability discrimination claims under the federal and state statutes. We affirm.

_____

[1]The Honorable Thomas Shields, United States Magistrate Judge for the Southern District of Iowa.

Simpson began his employment with the Water Works in February 1986. He worked as an installer-repairer on hydrants, valves, and pipelines until being seriously injured in a vehicle-pedestrian accident in April 1991. While on the job, Simpson was struck by a vehicle traveling at a high rate of speed and flung almost fifty feet in the air. As a result of the accident, he suffered multiple compound fractures to his left leg, damage to his right leg, and a permanent head injury with associated cognitive difficulties and post-traumatic stress disorder. Two years after his accident Simpson was able to return to work full-time, but not to his former job as installer-repairer. Instead, the Water Works created a full-time mail courier position that could accommodate his medical restrictions.

Following his return to work in March 1996, Simpson was suspended for going home to wrap his knee on company time. His supervisor had received a call from a customer who observed a Water Works truck parked in a neighborhood for an extended period of time each day. In response to the call, Simpson's supervisors followed him over a four-day period and documented his unexcused absences from work. On the basis of these absences, Simpson received a two-week suspension.

In April 1997, Simpson requested and was granted sick leave to take his wife to a doctor's appointment. Simpson's supervisor observed him at the Des Moines river during the time for which he had requested sick leave. At a pre-termination hearing conducted the next day, Simpson explained that he had dropped his wife off at the doctor's office and had parked by the river until it was time to pick her up. Based on this explanation, Simpson's discipline was reduced from termination to a fifteen-day suspension and a directive to read the employee handbook. He appealed the suspension, but the discipline was upheld.

Simpson's problems at work continued. In late October 1999 he failed a drug test following a co-worker's report that he smelled of a substance thought to be marijuana. He was not disciplined, and instead received treatment and returned to

work on December 2, 1999. In February 2000 he was suspended for three days for leaving work early without supervisor approval; this disciplinary action was upheld after a grievance. In August 2000 a female employee complained that Simpson had sexually harassed her, and an investigation into the complaint resulted in his termination. After arbitration through the union process, his discipline was reduced to a thirty-six week suspension without pay.

During the time Simpson was serving his suspension, the Water Works conducted its annual budgeting process and decided to eliminate the mail courier position. When Simpson was reinstated, he was put on leave and eventually laid off with full pay and benefits. Further grievance through the union process led to a compromise whereby the Water Works would create a new job for Simpson, that of lab courier. However, two days after he returned to work as lab courier in July of 2001, the Iowa Department of Transportation notified the Water Works that Simpson's driver's license was suspended. Simpson was able to get his license reinstated that day by paying a small fee, but an investigation by the Water Works revealed that he had known for months that his driver's license was invalid.

On August 21, 2001 a co-worker reported to her manager that Simpson had a heavy oily smell, which the employee attributed to marijuana. The next morning Simpson submitted to a drug test, which proved positive. This led to his termination, effective September 14, 2001, for failing the drug test and for driving a Water Works vehicle while he should have known that he did not have a valid driver's license.

Simpson filed this action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; disability discrimination, hostile work environment, and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.; and discrimination in violation

of 42 U.S.C. § 1981 and the Iowa Civil Rights Act, Iowa Code Chapter 216.[2]  The Water Works filed a motion for summary judgment, which the magistrate granted following oral argument.

Simpson appeals only his disability discrimination claims under the Americans with Disabilities Act and the Iowa Civil Rights Act.  He argues that the magistrate judge erred as a matter of law in concluding that he was not a qualified individual with a disability.  Simpson also contends that the magistrate judge erred by finding no genuine issue of material fact as to whether Simpson's alleged disability was a motivating factor in his workplace discipline and eventual termination.

We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party.  Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 852 (8th Cir. 2003).  In doing so we apply the same standard as the district court and may affirm on any grounds supported by the record.  Bass v. SBC Communications, Inc., 418 F.3d 870, 872 (8th Cir. 2005).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  R. Civ. P. 56(e)); see also Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct proceedings in the case, including the entry of judgment.

In reviewing Simpson's claim, we bear in mind that summary judgment is disfavored in employment discrimination cases, as such cases are "inherently fact-based." Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir.2003) (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir.1999)). Nonetheless, "summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." EEOC v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001).

The Americans with Disabilities Act and the Iowa Civil Rights Act prohibit covered employers from discriminating against an otherwise qualified individual with a disability on account of that disability. 42 U.S.C § 12112(a); Iowa Code § 216.6(1).[3] In the absence of direct evidence of discrimination, claims are evaluated under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005).[4] First, an employee must make out a *prima facie* case by showing that "(1) the employee is disabled within the meaning of the ADA; (2) the employee is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) the employee suffered an adverse employment action because of the

---

[3] Disability discrimination claims under the Iowa Civil Rights Act are analyzed under the same framework as that used for claims brought under the Americans with Disabilities Act. See Fuller v. Iowa Dep't of Hum. Svcs., 576 N.W.2d 324, 329 (Iowa 1998).

[4] Simpson argues that the magistrate judge should have applied Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), which he contends alters the McDonnell Douglas calculus. Although relevant in the context of mixed-motive jury instructions, this Court has concluded that "Desert Palace had no impact on prior Eighth Circuit summary judgment decisions." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004); see also Johnson v. AT&T Corp., No. 04-2305, WL 2138808, n.4 (8th Cir. Sept. 7, 2005). Therefore, the McDonnell Douglas framework remains the proper mode of analysis for summary judgment cases.

disability." <u>Henderson v. Ford Motor Co.</u>, 403 F.3d 1026,1034 (8th Cir. 2005). Once the employee establishes a *prima facie* case, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> If the employer puts forth such a reason, the employee has the burden of demonstrating that the proffered reason is merely a pretext for discrimination. <u>Id.</u>

Assuming without deciding, that Simpson's mental impairments qualify him as disabled under the Americans with Disabilities Act, he nonetheless fails to make out a *prima facie* case of disability discrimination. Specifically, Simpson has produced insufficient evidence that he suffered an adverse employment action because of his disability, the third element of his *prima facie* case. To survive summary judgment on this element of the *prima facie* case, a plaintiff must show "'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." <u>Griffith</u>, 387 F.3d at 736 (citing <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997)). In the absence of direct evidence, the plaintiff may survive summary judgment with evidence that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." <u>Lowery v. Hazelwood Sch. Dist.</u>, 244 F.3d 654, 657 (8th Cir. 2001).

Here, Simpson has failed to establish the required "specific link" between the disability discrimination he alleges and the adverse employment actions he suffered. <u>See</u> <u>Griffith</u>, 387 F.3d at 736. Simpson has pointed to no direct evidence that his mental impairment was a motivating factor in his discipline and eventual termination; nor could he, as it is undisputed that each adverse employment action he complains of was the direct result of actions Simpson took or failed to take. Simpson does not deny that he tested positive for marijuana and that his driver's license was invalid at the time he was terminated from his position as lab courier. Likewise, there is simply

no evidence from which a jury could infer that Simpson was disciplined or terminated "under circumstances giving rise to an inference of unlawful discrimination," Lowery, 244 F.3d at 657, as the record is devoid of any indication that employees of the Water Works harbored animosity towards persons with disabilities or that similarly-situated non-disabled employees were treated more favorably than Simpson. See id., at 659-60. In the absence of evidence, direct or otherwise, that Simpson's alleged disability played any role in his termination, we are left with his allegations that the Water Works was "out to get him" and his speculation regarding the "true motives" of his supervisors. Such allegations and speculation are insufficient to survive summary judgment without facts to support them. See Jeseritz v. Potter, 282 F.3d 542, 546-47 (8th Cir. 2002) (similar claim under Rehabilitation Act).

Even assuming that Simpson can make out a weak *prima facie* case, he fails to rebut the legitimate, non-discriminatory reasons for the adverse employment actions advanced by the Water Works. Henderson, 403 F.3d at 1034. The Water Works presents facts, which Simpson does not dispute, supporting its claim that Simpson's four suspensions were the result of, respectively: (1) his unexcused absences from work; (2) his misuse of sick leave; (3) his leaving work early without supervisor approval; and (4) the findings of the investigation into a co-worker's allegations of sexual harassment. The Water Works also presented undisputed facts that it terminated Simpson for driving a company vehicle while he should have known that he did not have a valid driver's license and for failing a second drug test. Although Simpson claims that each of these reasons are a pretext for disability discrimination, he fails to point to specific facts which indicate, in any way, that the adverse employment actions were based on anything other than the proffered reasons.

We affirm the grant of summary judgment.

_____