**ARENA HOLDINGS CHARITABLE, LLC, a Delaware limited liability company; and RE Arena, Inc., a Nevada Foreign corporation, Plaintiffs,**

v.

**HARMAN PROFESSIONAL, INC., a Delaware corporation, Defendant and Third-Party Plaintiff,**

v.

**Impulse Group, Inc.; Impulse Group, LLC; HB Sound & Light, Inc.; and ON Semiconductor Corporation, Third-Party Defendants.**

Case No. 1:12–cv–031

United States District Court, D. North Dakota, Southwestern Division.

Signed March 12, 2014

Bradley J. Beehler, Morley Law Firm, Grand Forks, ND, Brad W. Breslau, Richard R. Rardin, Cozen O'Connor, Denver, CO, for Plaintiffs.

Randall J. Bakke, Shawn A. Grinolds, Bradley Neuman Wiederholt, Smith Bakke Porsborg Schweigert & Armstrong, Bismarck, ND, for Defendant and Third–Party Plaintiff.

Christopher P. Malone, Tamara L. Novotny, Cousineau McGuire Chartered, Minneapolis, MN, Joel A. Flom, Flom Law Office, P.A., Fargo, ND, for Third–Party Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Daniel L. Hovland, District Judge
United States District Court

Before the Court is the Defendant and Third–Party Plaintiff Harman Professional, Inc.'s motion for summary judgment filed on November 1, 2013.[1] *See* Docket No. 51. The Plaintiffs, Arena Holdings Charitable, LLC, and RE Arena, Inc., filed a response in opposition to the motion on November 22, 2013. *See* Docket No. 62. The Third–Party Defendant, ON Semiconductor Corporation, filed a memorandum in support of the motion for summary judgment on November 22, 2013. *See* Docket No. 64. Harman Professional, Inc. filed a reply on December 2, 2013. *See* Docket No. 68. Also before the Court is the Third–Party Defendant ON Semiconductor's motion to dismiss the third-party complaint, filed on November 27, 2013.

*See* Docket Nos. 64 and 66. For the reasons set forth below, the motion for summary judgment is granted.

## I. *BACKGROUND*

On March 8, 2012, the Plaintiffs, Arena Holdings Charitable, LLC, ("Arena Holdings") and RE Arena, Inc., initiated this action in District Court for the Northeast Central Judicial District, Grand Forks County, North Dakota, against Harman Professional, Inc. and Harman International Industries, Inc. alleging negligence and strict liability claims. *See* Docket No. 1–1. The case was removed to federal district court on March 23, 2012. *See* Docket No. 1. On July 27, 2012, the Defendants filed a third-party complaint against Impulse Group, Inc.; Impulse Group, LLC; HB Sound & Light, Inc.; and ON Semiconductor Corporation, alleging negligence, products liability, breach of express warranties, and breach of implied warranties, as well as seeking contribution and/or indemnification. *See* Docket No. 20.

This matter arises from a fire that occurred at the Ralph Engelstad Arena ("Engelstad Arena") in Grand Forks, North Dakota, on July 3, 2011. The Plaintiffs allege the fire started when a Crown Macro–Tech 5002VZ amplifier produced a direct current to a speaker that spread to adjoining speakers located in the catwalk area of the Engelstad Arena. *See* Docket No. 1–1, p. 4. The fire caused approximately $5,000,000.00 of damage throughout the Engelstad Arena, including damage to the building and fixtures, as well as damage to personal property. *See* Docket No. 57, p. 1. The fire directly damaged the Engelstad Arena structure and equipment in the vicinity of the amplifier and speakers. The presence of smoke and soot

---

1. The motion for summary judgment was originally filed by Harman Professional, Inc. and Harman International Industries, Inc. However, on November 14, 2013, the Court dismissed Harman International Industries, Inc. pursuant to a stipulation by the parties. *See* Docket No. 61.

throughout the Engelstad Arena after the fire caused additional damage.

During construction of the Engelstad Arena in 2001, Arena Construction, Inc.,[2] the predecessor in interest of Arena Holdings, contracted with Impulse Group, Inc.[3] for the installation of Engelstad Arena's sound reinforcement system. Pursuant to the contract with Arena Holdings, Impulse Group installed the amplifier alleged to have caused the fire. *See* Docket No. 53–1. Harman Professional manufactured and sold multiple amplifiers, including the Crown Macro–Tech 5002VZ amplifier alleged to have started the fire, to Impulse Group for installation at the Engelstad Arena. Construction of the Engelstad Arena was completed in 2001, with operations at the facility commencing by October, 2001. *See* Docket No. 62–2, p. 3.

Harman Professional asserts "[e]very Crown Amplifier, including the subject amplifier, ships with a reference manual, which includes the 3–year Crown Warranty, and standard disclaimer of incidental and consequential damages." *See* Docket No. 52, pp. 6–7. Pursuant to the reference manual, Crown/Harman warranted Crown's products were free of defects in material and workmanship for a period of three (3) years. Additionally, the warranty specifically disclaimed consequential and incidental damages:

> DISCLAIMER OF CONSEQUEN-TIAL AND INCIDENTAL DAMAGES YOU ARE NOT ENTITLED TO RECOVER FROM U.S. ANY INCIDENTAL DAMAGES RESULTING FROM ANY DEFECT IN THE NEW CROWN PRODUCT. THIS INCLUDES ANY DAMAGE TO ANOTHER PRODUCT OR PRODUCTS RESULTING FROM SUCH A DEFECT. **SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATIONS OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.**

*See* Docket No. 20–6, p. 2.

It is undisputed the Plaintiffs did not receive the above-described reference manual from Impulse Group until after November 20, 2001. *See* Docket No. 62–4. During the course of litigation, a Macro–Tech Reference Manual was located in an employee's office at the Engelstad Arena. *See* Docket No. 57–2, pp. 36–37. Therefore, the Court reasonably concludes a representative for the Plaintiffs received the reference manual sometime after November 20, 2001. It is, however, unclear from the record the exact date the Plaintiffs or their predecessors in interest received such reference manual.[4]

---

**2.** Arena Construction, Inc. is allegedly the predecessor in interest to the Plaintiff Arena Holdings and was the party which contracted with Impulse Group for the installation of the sound reinforcement system at the Engelstad Arena. "Arena Holdings" will be used herein to refer to both Arena Holdings and its predecessor Arena Construction, Inc.

**3.** Arena Holdings entered into a contract with Impulse Group, Inc. for the installation of Engelstad Arena's sound reinforcement system. *See* Docket No. 53–1. Nonetheless, based upon the pleadings, the Plaintiffs remitted payment to Impulse Group, LLC for work performed on the sound reinforcement system

at the Engelstad Arena. *See* Docket No. 20–5. Although the precise relationship between Impulse Group, Inc. and Impulse Group, LLC is not clearly reflected in the record, the record demonstrates both entities essentially functioned as one entity to perform work on the sound reinforcement system at the time the Engelstad Arena was constructed. Accordingly, "Impulse Group" will be used herein to refer to both Impulse Group, Inc. and Impulse Group, LLC.

**4.** The Court notes the Plaintiffs correctly state the Macro–Tech Reference Manual for the 5002VZ amplifier attached as an exhibit to Harman Professional's motion for summary

The specifications for the sound reinforcement system at the Engelstad Arena required Impulse Group, as the sound reinforcement system contractor, to assure the quality of the sound reinforcement system equipment:

### 1.2 QUALITY ASSURANCE

A. It is critical that the sound reinforcement system equipment is designed and installed as a system to meet the performance, quality, and appearance based on requirements specified herein.

B. The SRSC [sound reinforcement system contractor] *shall provide a five-year warranty on the complete sound reinforcement system, equipment and installation. This warranty shall not void specific warranties issued by manufacturers for greater periods of time.* The SRSC shall provide satisfactory evidence that he maintains a service organization capable of furnishing adequate service to the equipment after the warranty period.

*See* Docket No. 53–4, p. 1 (emphasis added). These specifications, including the 5–year warranty provision, were expressly incorporated into the contract entered into by Impulse Group and Arena Holdings. *See* Docket No. 53–1, pp. 6–7. Neither the contract between Impulse Group and Arena Holdings, nor the incorporated sound reinforcement system specifications, expressly disclaimed the recovery of consequential or incidental damages.

On November 1, 2013, Harman Professional filed a motion for summary judgment, contending the economic loss doctrine precludes any recovery by the Plaintiffs in tort or strict products liability for damages. *See* Docket No. 51. The Plaintiffs filed a response in opposition to the motion on November 22, 2013. *See* Docket No. 62. Third–Party Defendant, ON Semiconductor Corporation, filed a memorandum in support of the motion for summary judgment on November 22, 2013. *See* Docket No. 64. Harman Professional filed a reply on December 2, 2013. *See* Docket No. 68.

In support of their motion, Harman Professional argues the Court should strictly apply the Eighth Circuit Court of Appeals' foreseeability approach outlined in *Dakota Gasification Co. v. Pascoe Building Systems,* 91 F.3d 1094 (8th Cir.1996). Accordingly, Harman Professional contends the Plaintiffs are precluded from recovering damages because the fire caused by the amplifier was reasonably foreseeable by the parties at the time of contracting. The Plaintiffs contend the Court should instead apply the United States Supreme Court's rationale of *Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). The Plaintiffs argue, pursuant to the holding of *Saratoga Fishing,* they are only precluded from recovering damages to the amplifier itself, but are permitted to recover damages to "other property." Alternatively, the Plaintiffs contend under *Dakota Gasification* they may nonetheless recover in tort because the damages were not reasonably foreseeable.

### II. *STANDARD OF REVIEW*

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to

judgment is a different manual than the manual attached to Harman Professional's third-party complaint. *See* Docket Nos. 20, 55–3, and 62. The Court need not decide which of the two manuals was received by the Plaintiffs as the language of the manuals relating to the 3–year warranty and disclaimer of consequential and incidental damages are identical.

judgment as a matter of law. *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir.2007); *see* Fed.R.Civ.P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir.2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. *Simpson v. Des Moines Water Works*, 425 F.3d 538, 541 (8th Cir.2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir.2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. *LEGAL DISCUSSION*

■ In determining the remedies available to the Plaintiffs, the Court must apply the substantive law of North Dakota. In the complaint, the Plaintiffs allege three causes of action against the Defendants: (1) negligence, (2) strict liability, and (3) post-sale duty to warn. *See* Docket No. 1–1. These causes of action sound in tort. The Plaintiffs have not alleged a cause of action sounding in contract (i.e. breach of implied or express warranty). Under the economic loss doctrine in North Dakota,

"economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action." *Leno v. K & L Homes, Inc.*, 2011 ND 171, ¶ 17, 803 N.W.2d 543 (quoting *Steiner v. Ford Motor Co.*, 2000 ND 31, ¶ 7, 606 N.W.2d 881).

The North Dakota Supreme Court has previously discussed the rationale underlying the economic loss doctrine:

Tort law imposes responsibility on manufacturers of defective products because they are best able to encourage safer manufacture and design and to allocate the costs of injury arising from unsafe products.

A contractual duty arises from society's interest in the performance of promises and has been traditionally concerned with the fulfillment of reasonable economic expectations. Society's need to spread losses is substantially lessened in commercial transactions where damage is to only the product itself, because those losses essentially relate to the benefit of the bargain between business entities. That loss is most frequently measured by the cost of repairs, the difference in the value of the product, or consequential damages attributable to the failure of the product to perform as expected. Those losses are based upon, and flow from, the purchaser's loss of the benefit of the contractual bargain and are the type for which a warranty action provides redress.

This Court recognized society's interest in safe products is adequately protected by allowing tort recovery when a defective product causes injury to persons or other property: Although society has a strong interest in safe products, the rules of negligence and strict liability for damage to property other than the prod-

uct itself and for personal injury adequately protect that interest and provide manufacturers with incentive to produce safe products.

*Clarys v. Ford Motor Co.*, 1999 ND 72, ¶ 7, 592 N.W.2d 573 (internal citations omitted). Although the North Dakota Supreme Court has applied the economic loss doctrine to determine tort recovery in several cases, it has not yet had the opportunity to consider whether tort recovery is permitted for damage to "other property." *See Everkrisp Vegetables, Inc. v. Tobiason Potato Co., Inc.*, 870 F.Supp.2d 745, 750–51 (D.N.D.2012). Nonetheless, the Eighth Circuit Court of Appeals and this Court have addressed the issue and predicted how the North Dakota Supreme Court would decide the matter.

Harman Professional contends the Court should strictly apply the holding of *Dakota Gasification v. Pascoe Building Systems* to the present case. According to Harman Professional, the Plaintiffs' claims are barred because the sustained damage to the Engelstad Arena was reasonably foreseeable at the time of contracting. *See* Docket No. 52, pp. 24–25. The Plaintiffs contend the Court should apply the rationale of *Saratoga Fishing v. J.M. Martinac & Co.* and find they are only precluded from recovering damage to the Crown Macro–Tech 5002VZ amplifier itself, but are permitted to recover for damage to the Engelstad Arena building, its fixtures, and personal property. To address the parties' contentions, the Court must review both the *Dakota Gasification* and *Saratoga Fishing* cases, as well as those decisions by this Court and the North Dakota Supreme Court applying the *Dakota Gasification* foreseeability approach and the *Saratoga Fishing* product/other property dichotomy.

## A. *THE ECONOMIC LOSS DOCTRINE: THE FORESEEABILITY APPROACH*

In *Dakota Gasification*, the Eighth Circuit upheld this Court's prediction the North Dakota Supreme Court would conclude the economic loss doctrine precludes tort liability "for physical damage to other nearby property of commercial purchasers who could foresee such risks at the time of purchase." 91 F.3d 1094, 1101 (8th Cir. 1996). In 1986, Dakota Gasification Company ("Dakota Gasification") had purchased a synthetic natural gas production plant in North Dakota from the U.S. Department of Energy. *Id.* at 1096–97. The contract to purchase the plant specified the assets were being purchased "as is." *Id.* at 1097. In 1991, a roof of one of the plant's buildings, the oxygen plant, collapsed due to ice and snow accumulation, causing significant property damage. The collapse did not cause any bodily injury.

In the initial construction of the natural gas production plant, a subcontractor for the project contracted with Pascoe Building Systems ("Pascoe") to supply structural steel for the oxygen plant. This contract warranted Pascoe's products were free of defects in materials and workmanship and provided Pascoe would repair or replace any defective products for one year. The contract disclaimed any other warranties, express or implied, as well as consequential damages: "[Pascoe] SHALL NOT BE RESPONSIBLE FOR ANY INDIRECT OR CONSEQUENTIAL DAMAGES (SUCH AS DAMAGES TO THE CONTENTS OR FURNISHINGS IN ANY BUILDING) OR ANY LOSS OF ANY KIND WHATSOEVER." *Id.* at 1100.

After the collapse of the oxygen plant roof, Dakota Gasification filed suit against Pascoe and others alleging negligence, strict liability, breaches of express and im-

plied warranty, and parent and successor corporation liability. *Id.* at 1097. Predicting how North Dakota courts would apply the economic loss doctrine, this Court determined the economic loss doctrine precluded Dakota Gasification from recovering in tort because (1) the damages were only to the oxygen plant and (2) the damages were well within the contemplation of the parties to the contract. On appeal, the Eighth Circuit agreed the economic loss doctrine precluded Dakota Gasification from recovering in tort because the damages to the oxygen plant were well within the contemplation of the parties. Consequently, the Eighth Circuit did not determine whether the oxygen plant itself was a single product.

In determining how the North Dakota Supreme Court would address the issue, the Eighth Circuit reviewed North Dakota case law and recognized the trend in many jurisdictions to hold tort remedies unavailable for "property damage experienced by the owner where the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless whether the damage was to the 'goods' themselves or to other 'property.'" *Id.* at 1099. Specifically citing the provision of the Pascoe contract disclaiming consequential damages, the Eighth Circuit concluded damage to the oxygen plant was "within the contemplation of the parties" when they signed the contract. *Id.* at 1100. The parties entered into the contract after evaluating the risks and liabilities that would follow if the materials provided by Pascoe failed.

Since the Eighth Circuit's decision of *Dakota Gasification,* this Court has consistently focused on the foreseeability of the damage to other property as the dispositive issue determinative of whether a plaintiff may recover in tort. *See Albers v. Deere & Co.,* 599 F.Supp.2d 1142, 1152 (D.N.D.2008); *DJ Coleman, Inc. v. Nufarm Americas, Inc.,* 693 F.Supp.2d 1055, 1064 (D.N.D.2010); *Everkrisp Vegetables,* 870 F.Supp.2d at 751. However, this Court has not specifically relied upon a disclaimer of consequential damages within the parties contract to demonstrate such damages were within the contemplation of the parties when they signed the contract, as the Eighth Circuit did in *Dakota Gasification.* Instead, the Court has approached a plaintiff's tort recovery for damage to other property by asking whether the damage was foreseeable in the event of a defect in the product. *See DJ Coleman,* 693 F.Supp.2d at 1064.

## B. *THE ECONOMIC LOSS DOCTRINE: THE PRODUCT/OTHER PROPERTY DICHOTOMY*

A year after the Eighth Circuit decided *Dakota Gasification,* the United States Supreme Court addressed the application of the economic loss doctrine to tort recovery. *See Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). The Plaintiffs contend the Court should apply the rationale of *Saratoga Fishing* and find they are only precluded from recovering damage to the Crown Macro–Tech 5002VZ amplifier itself, but are permitted to recover for damage to the Engelstad Arena building, fixtures, and personal property.

In *Saratoga Fishing,* the United States Supreme Court addressed whether a tort plaintiff may recover for the destruction of extra equipment added after the initial sale of a product and then resold as part of the product. 520 U.S. 875, 877, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). In 1987, a fire caused a fishing vessel owned by Saratoga Fishing Co. ("Saratoga") to sink. Saratoga had purchased the vessel from an individual who had added fishing equipment to the ship after purchasing it from

the ship builder, J.M. Martinac & Co. ("Martinac"). The district court found Martinac installed a defectively designed hydraulic system and awarded Saratoga damages, including damages for the equipment added to the ship after it was purchased by the initial buyer. *Id.* at 878, 117 S.Ct. 1783. On appeal, the Ninth Circuit disagreed and concluded the economic loss doctrine precluded Saratoga from recovering in tort for the loss against Martinac.

The Supreme Court looked to its earlier decision of *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), to determine whether Saratoga could recover in tort. In *East River*, the court held damage to a product itself was an "economic loss" for which tort law did not provide compensation. 476 U.S. at 871, 106 S.Ct. 2295. The *Saratoga Fishing* Court consequently concluded expanding the principle of *East River* to bar recovery for damages to additional equipment added after the initial sale of the product was beyond the boundary set by the principle's rationale. 520 U.S. at 880, 117 S.Ct. 1783. Rather, it is "other property" and the manufacturer is liable in tort for damage to other property. *Id.* at 884, 117 S.Ct. 1783. The Court noted that viewing the ship and the equipment added before subsequent sale as the "product itself" creates extensive tort damage immunity that would otherwise not exist had the initial buyer retained the ship. *Id.* at 880, 117 S.Ct. 1783. State law often distinguishes between items added to or used in conjunction with a defective product and permits recovery for damage to the additions. Therefore, the *Saratoga Fishing* court concluded the economic loss doctrine bars recovery for the "product itself," that is the product that was "placed in the stream of commerce by the manufacture." *Id.* at 883, 117 S.Ct. 1783.

## C. *NORTH DAKOTA DECISIONS AFTER DAKOTA GASIFICATION AND SARATOGA FISHING*

Since the *Dakota Gasification* and *Saratoga Fishing* decisions, the North Dakota Supreme Court has twice addressed the scope of the economic loss doctrine. In *Clarys v. Ford Motor Co.*, the North Dakota Supreme Court held the economic loss doctrine applies equally to consumers and business purchasers of defective products. 1999 ND 72, ¶ 20, 592 N.W.2d 573. The court concluded contract remedies, including those within the Uniform Commercial Code, provide an adequate remedy for both consumers and commercial plaintiffs who purchase defective products. *Id.* at ¶ 10. In reaching its conclusion, the North Dakota Supreme Court embraced the rationale of *East River* and the distinction between damage to the product itself and damage to "other property." *Id.* at ¶ 14. A year later, the North Dakota Supreme Court was again asked to determine whether a plaintiff's tort claims were barred by the economic loss doctrine. *See Steiner v. Ford Motor Co.*, 2000 ND 31, 606 N.W.2d 881. In *Steiner v. Ford Motor Co.*, the court strictly adhered to its prior holding of *Clarys* and concluded the plaintiff's tort claims were barred by the economic loss doctrine because only the defective product was damaged. *Id.* at ¶¶ 7, 10–12.

In both decisions involving the economic loss doctrine, the North Dakota Supreme Court cited with approval its earlier decision of *Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591 (N.D.1984), for the proposition that economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a contract action, but not in a tort action. *Clarys*, 1999 ND 72, ¶ 6, 592 N.W.2d 573; *Steiner*, 2000 ND 31, ¶ 7, 606 N.W.2d 881.

In *Hagert,* the court concluded "economic loss, as distinguished from injury to property, may be recovered under express or implied warranty under the Uniform Commercial Code but not under ... strict liability in tort." 350 N.W.2d at 595. However, in neither *Clarys* nor *Steiner* did the North Dakota Supreme Court look to the Eighth Circuit's decision of *Dakota Gasification.*

As this Court has previously noted, the United States Supreme Court's decision of *Saratoga Fishing,* as well as the North Dakota Supreme Court's post-*Dakota Gasification* case law's adherence to the defective product/other property dichotomy, create some doubt as to the accuracy of the Eighth Circuit's prediction the North Dakota Supreme Court would adopt the *Dakota Gasification* "foreseeability approach." *See Albers v. Deere & Co.,* 599 F.Supp.2d 1142, 1150–51. Nonetheless, the Court is "obligated to follow the Eighth Circuit's prediction of North Dakota law unless a subsequent state court decision or a statutory amendment has rendered the prediction clearly wrong." *Id.* at 1151–52. Although there is doubt as to the accuracy of the Eighth Circuit's prediction, there has been no decision from the North Dakota Supreme Court, and no statutory amendment, to indicate the Eighth Circuit's prediction is clearly wrong. Consequently, the Court is to apply the foreseeability approach of *Dakota Gasification* to determine whether the economic loss doctrine precludes the Plaintiffs from recovering in tort. *See Everkrisp Vegetables Inc.,* 870 F.Supp.2d at 751.

Acknowledging the precedent of this Court and the Eighth Circuit, the Plaintiffs alternatively request the Court certify to the North Dakota Supreme Court the question of whether the economic loss doctrine applies when there is damage to property other than the defective product.

*See* Docket No. 62, p. 22. In the broad exercise of its discretion, the Court declines to do so and will follow the Eighth Circuit's foreseeability approach outlined in *Dakota Gasification. See DJ Coleman,* 693 F.Supp.2d at 1064.

### D. APPLYING THE EIGHTH CIRCUIT'S FORESEEABILITY APPROACH

Applying the Eighth Circuit's foreseeability approach, the Court concludes the Plaintiffs are precluded from recovering in tort for the damage to the Crown Macro–Tech 5002VZ amplifier alleged to have caused the fire, as well as the damage to the Engelstad Arena building and personal property contained therein, because the damage was foreseeable such that the parties could have addressed the loss at the time of contracting. The Eighth Circuit has discussed the rationale for protecting commercial suppliers from tort claims where there is no personal injury or damage to other property:

> The rationale for this approach is that using the economic loss doctrine to prevent tort remedies for damage to other property or to third parties is *inappropriate* because such *damage was not within the contemplation of the contracting parties* and the *parties therefore did not fairly bargain for this additional unforeseeable risk.*

*Dakota Gasification,* 91 F.3d at 1099 (emphasis added). Accordingly, where damage due to the defective product is foreseeable such that the parties contractually determined their exposure to risk, tort remedies are unavailable. *Id.*

In the cases decided by this Court in light of *Dakota Gasification,* the Court has consistently focused on the foreseeability of the damage to other property. *See Albers,* 599 F.Supp.2d at 1152; *DJ Coleman,* 693 F.Supp.2d at 1064; *Everkrisp*

*Vegetables,* 870 F.Supp.2d at 751. Similarly here, the Court finds the alleged damage to the Engelstad Arena was clearly foreseeable at the time Arena Holdings contracted with Impulse Group for the installation of the sound equipment. While the Plaintiffs may have not specifically anticipated the Crown Macro–Tech 5002VZ amplifier would cause a fire, it was clearly foreseeable that a defect in an amplifier could cause a fire in the Engelstad Arena. Consequently, the specifications for the sound reinforcement system, expressly incorporated into the contract between Impulse Group and Arena Holdings, required Impulse Group to provide a five-year warranty on the complete sound reinforcement system, equipment, and installation. *See* Docket No. 53–4, p.1. The language of the five-year warranty evidences Arena Holding's desire to insulate and protect itself from defects in the sound reinforcement system, including the amplifiers provided by Harman Professional. Considering the warranty language within the specifications in light of the commercial relationship between Arena Holdings and Impulse Group, the Court concludes the alleged damage to the Engelstad Arena was clearly foreseeable when Arena Holdings contracted with Impulse Group.

The Plaintiffs contend the holding of *Dakota Gasification* was "premised primarily upon the conclusion that the oxygen plant was an integrated product and that there had been actual bargaining over the scope of liability for consequential loss that clearly included damage to the 'other property' which was at issue." *See* Docket No. 62, p. 22. Further, the Plaintiffs claim no facts have been presented to demonstrate bargaining between them and Harman Professional with respect to consequential losses.

The Court disagrees with the Plaintiffs' contention the holding of *Dakota Gasification* was premised upon the conclusion the

oxygen plant was an integrated product. In *Dakota Gasification,* the Eighth Circuit unequivocally stated their refusal to determine whether the oxygen plant was a single/integrated product. 91 F.3d at 1099. Instead, the holding of *Dakota Gasification* was solely premised upon a foreseeability approach. *Id.* Further, although the Eighth Circuit in *Dakota Gasification* found the disclaimer of consequential damages within the contract demonstrated the parties contemplated the distribution of risk for consequential damages, the cases decided by this Court in light of *Dakota Gasification* have not required such evidence of bargaining between the parties as to consequential damages, or distribution of risk as to consequential damages, as a prerequisite for the application of the economic loss doctrine when such damages were clearly foreseeable by the parties at the time of contracting. *See Albers,* 599 F.Supp.2d at 1152; *Everkrisp Vegetables,* 870 F.Supp.2d at 751. Requiring evidence of bargaining or distributing risk between the parties as to consequential damages as a prerequisite to preclude tort recovery for economic losses would encourage commercial entities to "bargain for" no warranties and rely upon tort law as the mechanism to recover damages that were clearly foreseeable by the parties at the time of contracting.

The Court would note it is unclear whether the parties here bargained for the risk of a fire caused by an amplifier. The only evidence presented to the Court regarding the distribution of risk as to any consequential damages was the disclaimer of consequential damages within the Macro–Tech Reference Manual. *See* Docket No. 20–6, p. 2. However, it is undisputed the Plaintiffs did not receive the reference manual until well-after the Engelstad Arena was constructed and operational. *See* Docket No. 62–4. Consequently, the Court does not rely upon nor look to the

disclaimer of consequential damages within the Macro–Tech Reference Manual as a basis for holding the Plaintiffs are precluded from recovering in tort for the damage to the Crown Macro–Tech 5002VZ amplifier alleged to have caused the fire, as well as the damage to the Engelstad Arena building and personal property contained therein. These damages were foreseeable such that the parties could have addressed the loss at the time of contracting.

The Plaintiffs' complaint against Defendant Harman Professional must be dismissed in its entirety. Accordingly, Third–Party Plaintiff Harman Professional's complaint against Impulse Group, Inc.; Impulse Group, LLC; HB Sound & Light, Inc.; and ON Semiconductor Corporation must similarly be dismissed in its entirety.

## IV. CONCLUSION

For the reasons set forth above, Harman Professional's motion for summary judgment (Docket No. 51) is **GRANTED** and the Plaintiffs' Motion for Hearing (Docket No. 65) is **DENIED**. Further, ON Semiconductor Corporation's motion to dismiss the third-party complaint (Docket No. 66) is **GRANTED**. Based on the dismissal of the third-party complaint, the Court **FINDS AS MOOT** ON Semiconductor Corporation's motion for summary judgment (Docket No. 73).

**IT IS SO ORDERED.**